UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In re:

DATG PIZZERIA, INC.

Debtor.

_____/

Case No. 22-17790-EPK
Chapter 11(Subchapter V)

## DEBTOR'S SUBCHAPTER V PLAN

DATG Pizzeria, Inc., the debtor-in-possession (the "**Debtor**"), pursuant to sections 1189 and 1190 of the Bankruptcy Code,[1] by and through undersigned counsel, respectfully files the following *Debtor's Subchapter V Plan*:

### Request Regarding Confirmation Hearing

Debtor respectfully requests that the confirmation hearing on this Plan be set on the Court's confirmation hearing date in mid-May 2023, to allow for the Evidentiary Hearing scheduled for April 17-21, 2023, to occur and the Court to render its decision which is fundamental to the terms of this Plan.

## SECTION 1

### BRIEF HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR PURSUANT TO 11 U.S.C. § 1190(1)(A)

The Debtor has been incorporated and in good standing in the State of Florida since October 6, 2010.  The Debtor owns and operates a pizzeria at 11701 Lake Victoria Gardens Avenue, Palm Beach Gardens, Florida pursuant to a lease that was executed on or about November 15, 2010.  Prior to the filing of this bankruptcy proceeding, the Debtor was engaged in a heavily contested eviction proceeding with its landlord, Excel Gardens, LLC, successor in interest to

---

[1] 11 U.S.C. §§ 101, *et seq*.

DocuSign Envelope ID: DDF97215-A381-4942-B280-20B522E4ADA3

Downtown at The Gardens Associates, Ltd., which is pending under Case No. 05-2020-CA-006747 in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida. This bankruptcy case was commenced to provide the Debtor with the opportunity to assume the lease, cure any existing monetary or non-monetary defaults which may exist under the lease, and pay all creditors in full.

**SECTION 2**

**LIQUIDATION ANALYSIS PURSUANT TO 11 U.S.C. §1190(1)(B)**

The Debtor's assets are set forth on Schedule A/B [ECF No. 29]. The Debtor's assets have a value of $105,238.50. Western Alliance Bank has filed Proof of Claim #7 asserting a secured claim in the amount of $105,238.50. To the extent the Western Bank Claim is allowed as secured and the Plan is not confirmed and this case were converted to a case under chapter 7 of the Bankruptcy Code there would be no assets available above the secured claim of Western Alliance Bank to satisfy the chapter 7 or chapter 11 administrative claims or general unsecured creditors. Under this Plan, Western Reserve Bank will receive the value of its collateral in full satisfaction of the secured portion of its claim. In addition, administrative claims will be paid in full and unsecured creditors will receive the allowed amount of their unsecured claims. Thus, unsecured creditors will receive more than they would receive in a liquidation.

**SECTION 3**

**MEANS FOR IMPLEMENTATION OF PLAN PURSUANT TO 11 U.S.C. § 1190(1)(C)**

This Plan and means for implementation are contingent upon the Debtor being successful in the evidentiary hearing on the currently scheduled for April 17-21, 2023, the (i) *Motion of Excel Gardens, LLC for Confirmation of the Scope of the Automatic Stay and for Relief from the Automatic Stay* **[ECF No. 44]**; (ii) *Debtor's Response to Motion of Excel Gardens, LLC for Confirmation of the Scope of the Automatic Stay* **[ECF No. 55]**; (iii) *Debtor in Possession's*

*Expedited Motion for (A) an Order Authorizing the Debtor to Assume Its Lease of Non-Residential Real Property; and (B) Determination of Adequate Assurance of Future Performance and Prompt Cure* **[ECF No. 65]**; Proof of Claim No. 8, filed by Excel Gardens, LLC; and *Debtor in Possession's Objection to Claim No. 8-1 of Excel Gardens, LLC* **[ECF No. 72]** and any amendments, modifications, or supplements thereto .

The Debtor asserts that it will have sufficient net disposable monthly income due to its future earnings to make the payments required under this Plan. A copy of the Debtor's projections is attached as Exhibit A.

To produce the income necessary to fund the Plan, the Debtor will continue to operate its business, which will produce the income necessary to fund the payments to creditors provided for in the Plan.

**NOTE:**  In the event that the Court determines that the Debtor is to be removed from the leased premises, then the Debtor will stop operating.  There will be no further income and this Plan will need to be amended and become a plan of liquidation.

## SECTION 4

## CLASSIFICATIONS AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

### ADMINISTRATIVE CLAIMS

A.    Debtor's General Counsel:  The Debtor has employed Alan R. Crane, Esq., and Furr & Cohen, P.A. to represent it in this bankruptcy case.   Debtor's counsel shall file a final fee application.   The Debtor paid counsel $30,000 prior to the filing of the bankruptcy.  $15,375.50.00 was used pre-petition, which includes the filing fee for the bankruptcy proceeding of $1,738.00.

As a result, counsel is still holding $14,624.50 of the pre-petition retainer received from the Debtor. Counsel estimates that the Debtor will owe an additional $75,000.00 in fees and costs.

        B.    <u>Debtor's Special Counsel</u>:  The Debtor is filing an application to employ Henry Wulf, Esq., and the law firm of Carlton Fields, P.A. to serve as special counsel to the Debtor. Debtor's Proposed Special Counsel shall file a final fee application seeking approval of all fees and costs incurred in connection with Proposed Special Counsel's representation of the Debtor.

        C.    <u>Subchapter V Trustee</u>:  Maria Yip is the appointed subchapter V trustee.  The Debtor anticipates that Ms. Yip's compensation will be approximately $5,000.00.  The subchapter V trustee shall file a final fee application.

        D.    <u>Performance Food Group, Inc.</u>:  Performance Food Group, Inc. filed Proof of Claim No. 4, along with its *Motion for Allowance of Administrative Expense Pursuant to 11 U.S.C. § 503(b)(9)* [ECF No. 53], asserting an administrative claim of $31,261.71 due under § 503(b)(9) of the Bankruptcy Code for food products supplied to the Debtor within twenty (20) days of the bankruptcy filing in the ordinary course of the Debtor's business.  The motion is set for hearing on January 4, 2023.  In the event the claim is allowed as an administrative claim, the claimant will be paid as an administrative claimant under the Plan.

        E.    <u>Payment of Administrative Claims</u>:

  (i) If the Plan is confirmed under section 1191(b) of the Bankruptcy Code, each administrative claimant shall be paid their allowed administrative claim over twelve months in equal installments commencing on the Effective Date and continuing on a monthly basis until paid in full unless the parties agree to other treatment in writing.

(ii) If the Plan is confirmed under section 1191(a), each administrative claim shall be paid in full on the Effective Date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the administrative claim and the Debtor.

## CLAIMS AND INTERESTS

**PRIORITY TAX CLAIMS** – The Debtor has scheduled a priority tax claim due to the Florida Department of Revenue in the amount of $15,260.00 for sales tax due. The priority tax claim will be paid in full in equal monthly installments commencing thirty (30) days after the Effective Date and ending five years after the date of the order for relief.

**CLASS 1** – Class 1 is the secured claim of Western Alliance Bank based on amounts due from the Debtor and its affiliates pursuant to a non-revolving commercial loan, as set forth in Proof of Claim #7.  Western Alliance Bank asserts a blanket lien on all the Debtor's assets, as evidenced by a UCC-1, filed with the Florida Secured Transaction Registry under document no. 201607039948 on March 24, 2016, and continued by document no. 202107758547, filed on July 16, 2021.  Provided that this Plan is confirmed and all creditors are being paid 100% of their allowed claims, then this obligation will continue to be paid in accordance with the loan documents evidencing the obligation until such time as the claim has been paid in full and Western Alliance Bank will retain its lien until such time as the claim has been paid in full.  However, Debtor expressly reserves all rights as to the treatment of Western Alliance Bank's Claim, including all defenses and claims against Western Alliance Bank if this Plan is not confirmed. Class 1 is unimpaired.

**CLASS 2** – Class 2 are the non-priority unsecured claims.  The claimants will be paid the allowed amount of their claim in full in equal monthly installments commencing on the Effective Date and ending no later than 36 months after the Effective Date.  Nothing shall prohibit the Debtor

from paying all payments due to Class 2 earlier than 36 months after the Effective Date. In the event the claim has not been allowed on the Effective Date, it will be paid in full at such time as it is allowed. Class 2 is unimpaired. A claims chart is attached hereto as Exhibit A.

**CLASS 3** – The Equity Interests of Coal Brick Oven Pizzeria Florida, Inc. The absolute priority rule is inapplicable in this bankruptcy. The Confirmation Order shall provide that Coal Brick Oven Pizzeria Florida, Inc. is the 100 percent owner of the Debtor and holds 100% of all outstanding equity interests in the Debtor. Coal Brick Oven Pizzeria Florida, Inc. shall retain its equity interests and 100% of all outstanding equity interests in the Debtor shall vest in Coal Brick Oven Pizzeria Florida, Inc. as of the Effective Date. Class 3 is not impaired.

## SECTION 5
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

A "disputed claim" is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either:

    A. A proof of claim has been field or deemed filed, and the Debtor or another party in interest has filed an objection; or

    B. The Debtor scheduled a claim and did not mark the claim disputed, contingent, or unliquidated in the schedules and Debtor or other interested party has filed an objection.

No distribution will be made, but all amounts that may be due under the Plan will be held in reserve on account of a disputed claim until such claim is allowed or disallowed by a final non-appealable order.

The Debtor shall retain the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## SECTION 6

## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A. The Debtor filed *Debtor in Possession's Expedited Motion For: (A) An Order Authorizing the Debtor to Assume its Lease of Non-Residential Real Property; and (B) Determination of Adequate Protection of Future Performance and Prompt Cure* [ECF No. 65], which is motion is set for an evidentiary hearing beginning on April 17, 2023 through April 21, 2023, to assume the lease agreement with Excel Gardens, LLC for the property where the Debtor conducts its business at 11701 Lake Victoria Gardens Avenue, Suite 3101, Palm Beach Gardens, Florida.  To the extent that the Debtor is successful in this litigation and the Court enters an order granting the Motion to Assume the Lease, the Debtor will assume the lease.

B. The Debtor believes that other than the lease described above, there are no other leases or executory contracts to which the Debtor is a party.  To the extent that any other such lease or executory contract, except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date or section 6(A) of this Plan, or that are subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.

C. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than the later of: (i) 14 days after the date of the order confirming this Plan, or (ii) 14-days after the entry of the order granting the motion to reject or the Court denying a motion to assume.

## SECTION 7

## EFFECT OF CONFIRMATION AND DISCHARGE OF DEBTOR

If the Debtor's Plan is confirmed under section 1191(a) of the Bankruptcy Code, on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in section 1141(d)(1)(A) of the Code.

If the Debtor's Plan is confirmed under section1191(b) of the Bankruptcy Code, confirmation of the Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in section 1192 of the Bankruptcy Code. The Debtor will not be discharged from any debt on which the last payment is due after the first 3 (three) years of the Plan, or as otherwise provided in section 1192 of the Bankruptcy Code.

## SECTION 8

## POST-CONFIRMATION DEBTOR'S STRUCTURE

The Debtor shall continue to exist after the Effective Date with all assets re-vesting in the Debtor and with all powers of a for-profit corporation under the laws of the State of Florida and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under Florida law. Following the Effective Date, the reorganized Debtor shall be free to operate and perform any and all acts authorized by its governing documents without further order from the Court, subject only to the terms of the Plan and Confirmation Order. Upon the Effective Date, the reorganized Debtor's management shall remain unchanged, in that Joseph M. Ciolli shall continue to act as president of the Debtor for the purpose of continuing to operate the business of the Debtor.

Upon the entry of the Confirmation Order, subject to the occurrence of the Effective Date, the property of the Debtor shall be free and clear of all claims and interests of creditors, except as otherwise provided for herein.

## SECTION 9

## TRUSTEE APPOINTED UNDER SUBCHAPTER V
## OF CHAPTER 11 - TERM AND COMPENSATION

A. **Term of Trustee under a Consensual Plan:**

If the Plan is confirmed under section 1191(a) of the Bankruptcy Code, the service of the Subchapter V Trustee shall terminate when the Plan has been substantially consummated. As such, the Debtor shall make all payments under the Plan, including any deposits required by the Plan to be distributed on the Effective Date and thereafter.

B. **Term of Trustee under a Non-Consensual or Cramdown Plan:**

If the Plan is confirmed under section 1191(b) of the Bankruptcy Code, except as otherwise provided in the Plan or in the order confirming the Plan, the Subchapter V Trustee shall make payments to creditors under the Plan.   In that event, the following provisions shall apply to all claims and disbursements made by the Subchapter V Trustee under the Plan:

i.   The Debtor shall file with the Court as a supplement to the Plan and provide notice to all creditors at or before confirmation, a list of all the creditors who will be receiving payments under the Plan, the total amount to be paid to each creditor under the Plan (inclusive of all allowed interest and fees) and the payment terms and schedule for each creditor under the Plan.

ii.   The Debtor shall timely pay to the Subchapter V Trustee all funds needed to make payments to creditors under the Plan.  If the Debtor fails to timely make any Plan payment to the Subchapter V Trustee, the Subchapter V Trustee may file and serve a notice of delinquency upon the Debtor and the Debtor's attorney.  The Debtor shall have fifteen (15) days from the date of the

DocuSign Envelope ID: DDF97215-A381-4942-B299-8DD522E4ADA3

notice of delinquency to make all payments due under the Plan, including any payments that become due within the 15-day period. If the Debtor is seeking to cure the delinquency in a modified Plan, the Debtor must file a motion to modify the confirmed Plan within 15 days of the date of the notice of delinquency. If the Debtor is not current with Plan payments on the 15th day after the date of the notice of delinquency or have not filed a motion to modify within that time period, the Subchapter V Trustee will file and serve a report of non-compliance and may, thereafter, seek the dismissal or conversion of the bankruptcy case to a case under chapter 7 of the Bankruptcy Code.

iii. Within two (2) weeks of receiving the funds from the Debtor to make the Plan payments, the Subchapter V Trustee will disburse the amounts collected from the Debtor to the holders of allowed claims pursuant to the treatment in their respective classes and as indicated below:

a.  All payments under the Plan will be made by the Subchapter V Trustee to the holder of each allowed claim at the address of such holder as listed on the Schedules and/or Proof of Claim unless the Subchapter V Trustee has been notified in writing of a change of address.

b.  Any payment required to be made under the Plan on a day other than a business day shall be made on the next succeeding business day.

c.  Any distributions of cash or other property under the Plan that is unclaimed for a period of six (6) months after such distribution was made shall constitute unclaimed property and any entitlement of any holder of any claim to such distribution shall be extinguished, forever barred, and shall be returned to the respective Debtor.

DocuSign Envelope ID: DDF97215-A381-4942-B289-8DD522E4ADA3

d.    Claimants shall not be permitted to amend or otherwise modify any claim after the later of the claims bar date or the date of the confirmation hearing without leave of the Bankruptcy Court. Any amendment to a claim filed after the later of the claims bar date or the date of the confirmation hearing shall be deemed disallowed in full and expunged without any action by the Subchapter V Trustee or the Debtor unless the claimholder has obtained prior authorization from the Bankruptcy Court for the filing of such amendment.  The Subchapter V Trustee shall have no obligation to recognize any transfer of any claim after distributions have started.

e.    Unless expressly provided for in the Plan or the order confirming the Plan, post-petition interest and fees shall not accrue on or after the date on which the bankruptcy petition was filed on account of any claim.

iv.   During the pendency of this case, the Debtor shall provide copies of yearly income tax returns to the Subchapter V Trustee (but not file with the Bankruptcy Court) no later than 30 days after the due date to the underlying taxing authority.

**C.  Compensation of Subchapter V Trustee:** Under section 330 of the Bankruptcy Code, the Subchapter V Trustee shall be compensated for services and reimbursed for expenses.  However, the method of payment of the Subchapter V Trustee compensation depends on the provision under which the Plan is confirmed:

i.    The Subchapter V Trustee compensation is estimated to be $5,000.00 through confirmation. The Subchapter V Trustee will apply to the Bankruptcy Court for an award of compensation through the application process that is used by professionals.  The Subchapter V

Trustee will file a final fee application for compensation to be heard with the other final fee applications in this case.

ii.  If the Plan is confirmed on a consensual basis under section 1191(a) of the Bankruptcy Code, then the Subchapter V Trustee's service ends with substantial consummation of the Plan under section 1183(c)(1) of the Bankruptcy Code, and the Subchapter V Trustee may collect approved compensation for all services. The Subchapter V Trustee's allowed compensation, as with any other administrative expenses, is payable on the Effective Date of the Plan, unless the Subchapter V Trustee agrees to a different treatment.

iii.  If the Plan is confirmed on a non-consensual basis under section 1191(b) of the Bankruptcy Code, then the Subchapter V Trustee will remain in place for the duration of the Plan (unless the Court provides otherwise in the Confirmation Order), and the Subchapter V Trustee may be entitled to additional compensation for services provided after confirmation. As such, the Subchapter V Trustee may file additional or supplemental fee applications throughout the duration of the Plan.  Upon approval of the Subchapter V Trustee's fee applications in a non-consensual case, as long as all professional administrative claims are similarly treated in the Plan, the Debtor shall pay all fee amounts due to the Subchapter V Trustee on the Effective Date of the Plan, over the remaining life of the Plan, or forthwith.

## SECTION 10

### UNCLAIMED DISTRIBUTIONS, AMENDMENT OF CLAIMS AND POST-PETITION INTEREST AND FEES

**The following provisions regarding unclaimed distributions, amendments of claims, post-petition interest and fees apply whether the Plan is confirmed on a consensual or non-consensual basis.**

i.  Any distributions of cash or other property under the Plan that is unclaimed for a period of six (6) months after such distribution was made shall constitute unclaimed property and

any entitlement of any holder of any claim to such distribution shall be extinguished, forever barred, and shall be returned to the Debtor. Claimants shall not be permitted to amend or otherwise modify any claim after the later of the claims bar date or the confirmation date without leave of the Bankruptcy Court. Any amendment to a claim filed after the later of the claims bar date or the confirmation date shall be deemed disallowed in full and expunged without any action by the Subchapter V Trustee or the Debtor unless the claimholder has obtained prior Court authorization for the filing of such amendment. The Subchapter V Trustee shall have no obligation to recognize any transfer of any claim after distributions have started.

 ii. Unless expressly provided in the Plan or the confirmation order, post-petition interest and fees shall not accrue on or after the Petition Date on account of any claim.

## SECTION 11

## REMEDIES UPON DEFAULT BY DEBTOR

If the Debtor fails to timely make any Plan payment to the Subchapter V Trustee or a creditor as required by the terms of this Plan, then the Subchapter V Trustee and/or the creditor may file and serve a notice of delinquency upon the Debtor and the Debtor's attorney. The Debtor shall have 15 days from the date of the notice of delinquency to make all payments due under the Plan, including any payments that become due within the 15-day period. If the Debtor is seeking to cure the delinquency in a modified Plan, the Debtor must file a motion to modify the confirmed Plan within 15 days of the date of the notice of delinquency. If the Debtor is not current with Plan payments on the 15th day after the date of the notice of delinquency or has not filed a motion to modify within that time period, the Subchapter V Trustee and/or the creditor will file and serve a report of non-compliance and may, thereafter, seek the appointment of a chapter 11 trustee,

dismissal or conversion of the case to chapter 7 proceeding.  The Debtor reserves the right to seek reinstatement or reconversion.

## SECTION 12

## GENERAL PROVISONS

### Definitions and Rules of Construction

A.  The definitions and rules of construction set forth in sections 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented below.

B.  "Debtor" shall mean DATG Pizzeria, Inc., the debtor in proceedings pending under subchapter V of chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida under case no. 22-17790-EPK.

C.  "Effective Date" of this Plan is the first business day following the date that is 14 days after the entry of the order confirming the Plan.  If, however, a stay of the order confirming the Plan is in effect on that date, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

D.  "Plan" shall mean this plan of reorganization in its entirety, together with all addenda, exhibits, schedules and other attachments hereto, in its present form or as it may be modified, amended or supplemented from time to time.

E.  "Priority Claim" shall mean a Claim entitled to priority under section 507(a)(3)-(7) of the Bankruptcy Code.

F.  "Priority Tax Claim" shall mean a Claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

G.  "Subchapter V Trustee" shall mean Maria Yip, the subchapter V trustee appointed under subchapter V of chapter 11 of the Bankruptcy Code.

H.  <u>Severability</u>.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

I.  <u>Binding effect</u>:  The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

J.  <u>Captions</u>: The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

K.  <u>Controlling effect</u>: Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

L.  <u>Retention of Jurisdiction</u>:  The Bankruptcy Court shall retain jurisdiction to enforce the terms of this Plan after the Effective Date of the Plan.

Remainder of Page Intentionally Left Blank

**SECTION 9**

**CONCLUSION**

Under the Plan, all creditors of the Debtor will participate in some manner in the distributions to be made hereunder. The Debtor believes that the distributions contemplated in the Plan are fair and afford all claimants equitable treatment. ACCORDINGLY, THE DEBTOR RECOMMENDS THAT ALL CLAIMANTS VOTE TO ACCEPT THE PLAN.

Dated:  December __, 2022

DATG PIZZERIA, INC.

By: _Joseph Ciolli_ _____

Name:  Joseph Ciolli

Title:  President

**DATG - Grimaldi's Pizzeria**
**Projected Income Statement**
**Year 1**

| | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 | Month 7 | Month 8 | Month 9 | Month 10 | Month 11 | Month 12 | Year 1 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Net Revenues | 261,357 | 254,843 | 283,120 | 261,646 | 257,925 | 245,962 | 269,264 | 240,356 | 204,421 | 269,676 | 245,560 | 306,476 | 3,100,606 | 100.0% |
| Cost of Goods Sold | (61,671) | (60,134) | (66,807) | (61,739) | (60,861) | (58,038) | (63,537) | (56,716) | (48,236) | (63,634) | (57,944) | (72,318) | (731,635) | -23.6% |
| **Gross Profit** | 199,686 / 76.4% | 194,709 / 76.4% | 216,314 / 76.4% | 199,907 / 76.4% | 197,064 / 76.4% | 187,923 / 76.4% | 205,727 / 76.4% | 183,640 / 76.4% | 156,185 / 76.4% | 206,042 / 76.4% | 187,616 / 76.4% | 234,158 / 76.4% | 2,368,970 / 76.4% | 76.4% |
| Labor Expense (31%) | (81,021) | (79,001) | (87,767) | (81,110) | (79,957) | (76,248) | (83,472) | (74,510) | (63,370) | (83,600) | (76,123) | (95,008) | (961,188) | -31.0% |
| Operating Expenses: | | | | | | | | | | | | | | |
| Controllable (13%) | (33,976) | (33,130) | (36,806) | (34,014) | (33,530) | (31,975) | (35,004) | (31,246) | (26,575) | (35,058) | (31,923) | (39,842) | (403,079) | -13.0% |
| Non-Controllable (30%) | (43,231) | (41,277) | (49,760) | (43,318) | (42,202) | (38,613) | (45,603) | (36,931) | (26,150) | (45,727) | (38,492) | (56,767) | (508,070) | -16.4% |
| Base rent, CAM and Taxes | (35,176) | (35,176) | (35,176) | (35,176) | (35,176) | (35,176) | (35,176) | (35,176) | (35,176) | (35,176) | (35,176) | (35,176) | (422,112) | -13.6% |
| Depreciation | (3,200) | (3,200) | (3,200) | (3,200) | (3,200) | (3,200) | (3,200) | (3,200) | (3,200) | (3,200) | (3,200) | (3,200) | (38,400) | -1.2% |
| **Total Operating Expenses** | (115,583) | (112,782) | (124,942) | (115,708) | (114,108) | (108,964) | (118,984) | (106,553) | (91,101) | (119,161) | (108,791) | (134,985) | (1,371,660) | -44.2% |
| **Operating Income** | 3,082 | 2,925 | 3,605 | 3,089 | 2,999 | 2,712 | 3,272 | 2,577 | 1,713 | 3,282 | 2,702 | 4,166 | 36,122 | 1.2% |
| *EBITDA ----->* | 6,282 | 6,125 | 6,805 | 6,289 | 6,199 | 5,912 | 6,472 | 5,777 | 4,913 | 6,482 | 5,902 | 7,366 | 74,522 | 2.4% |
| Other Inc./(Exp.): | | | | | | | | | | | | | | |
| Interest income | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0% |
| Interest expense | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0% |
| Total Other Inc./(Exp.) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0% |
| Income before Tax | 3,082 | 2,925 | 3,605 | 3,089 | 2,999 | 2,712 | 3,272 | 2,577 | 1,713 | 3,282 | 2,702 | 4,166 | 36,122 | 1.2% |
| Income Taxes | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0% |
| Net Income or (Loss) | 3,082 | 2,925 | 3,605 | 3,089 | 2,999 | 2,712 | 3,272 | 2,577 | 1,713 | 3,282 | 2,702 | 4,166 | 36,122 | 1.2% |

# EXHIBIT A

## DATG - Grimaldi's Pizzeria
## Projected Income Statement
## Year 2

| | Month 13 | Month 14 | Month 15 | Month 16 | Month 17 | Month 18 | Month 19 | Month 20 | Month 21 | Month 22 | Month 23 | Month 24 | Year 2 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Net Revenues | 274,425 | 267,585 | 297,276 | 274,728 | 270,822 | 258,260 | 282,727 | 252,373 | 214,642 | 283,160 | 257,838 | 321,800 | 3,255,636 | 100.0% |
| Cost of Goods Sold | (64,755) | (63,141) | (70,147) | (64,826) | (63,905) | (60,940) | (66,714) | (59,551) | (50,648) | (66,816) | (60,841) | (75,934) | (768,217) | -23.6% |
| **Gross Profit** | 209,670 | 204,444 | 227,129 | 209,902 | 206,917 | 197,319 | 216,014 | 192,822 | 163,994 | 216,344 | 196,997 | 245,866 | 2,487,419 | 76.4% |
| | 76.4% | 76.4% | 76.4% | 76.4% | 76.4% | 76.4% | 76.4% | 76.4% | 76.4% | 76.4% | 76.4% | 76.4% | 76.4% | |
| Labor Expense | (85,072) | (82,951) | (92,156) | (85,166) | (83,955) | (80,061) | (87,646) | (78,236) | (66,539) | (87,780) | (79,930) | (99,758) | (1,009,247) | -31.0% |
| Operating Expenses: | | | | | | | | | | | | | | |
| Controllable | (35,675) | (34,786) | (38,646) | (35,715) | (35,207) | (33,574) | (36,755) | (32,809) | (27,903) | (36,811) | (33,519) | (41,834) | (423,233) | -13.0% |
| Non-Controllable | (47,151) | (45,099) | (54,007) | (47,243) | (46,071) | (42,302) | (49,642) | (40,536) | (29,217) | (49,772) | (42,175) | (61,364) | (554,579) | -17.0% |
| Base rent, CAM and Taxes | (35,176) | (35,176) | (35,176) | (35,176) | (35,176) | (35,176) | (35,176) | (35,176) | (35,176) | (35,176) | (35,176) | (35,176) | (422,112) | -13.0% |
| Depreciation | (3,200) | (3,200) | (3,200) | (3,200) | (3,200) | (3,200) | (3,200) | (3,200) | (3,200) | (3,200) | (3,200) | (3,200) | (38,400) | -1.2% |
| **Total Operating Expenses** | (121,203) | (118,261) | (131,029) | (121,333) | (119,653) | (114,252) | (124,773) | (111,721) | (95,496) | (124,959) | (114,070) | (141,574) | (1,438,323) | -44.2% |
| **Operating Income** | 3,396 | 3,231 | 3,945 | 3,403 | 3,309 | 3,007 | 3,595 | 2,866 | 1,959 | 3,606 | 2,997 | 4,534 | 39,848 | 1.2% |
| *EBITDA ----->* | 6,596 | 6,431 | 7,145 | 6,603 | 6,509 | 6,207 | 6,795 | 6,066 | 5,159 | 6,806 | 6,197 | 7,734 | 78,248 | 2.4% |
| Other Inc./(Exp.): | | | | | | | | | | | | | | |
| Interest income | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0% |
| Interest expense | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0% |
| Total Other Inc./(Exp.) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0% |
| Income before Tax | 3,396 | 3,231 | 3,945 | 3,403 | 3,309 | 3,007 | 3,595 | 2,866 | 1,959 | 3,606 | 2,997 | 4,534 | 39,848 | 1.2% |
| Income Taxes | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0% |
| Net Income or (Loss) | 3,396 | 3,231 | 3,945 | 3,403 | 3,309 | 3,007 | 3,595 | 2,866 | 1,959 | 3,606 | 2,997 | 4,534 | 39,848 | 1.2% |

## DATG - Grimaldi's Pizzeria
## Projected Income Statement
## Year 3

| | Month 25 | Month 26 | Month 27 | Month 28 | Month 29 | Month 30 | Month 31 | Month 32 | Month 33 | Month 34 | Month 35 | Month 36 | Year 3 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Net Revenues | 293,634 | 286,316 | 318,085 | 293,959 | 289,779 | 276,338 | 302,518 | 270,040 | 229,667 | 302,981 | 275,986 | 344,326 | 3,483,530 | 100.0% |
| Cost of Goods Sold | (69,288) | (67,561) | (75,057) | (69,364) | (68,378) | (65,206) | (71,384) | (63,720) | (54,193) | (71,493) | (65,100) | (81,249) | (821,992) | -23.6% |
| **Gross Profit** | **224,347** | **218,755** | **243,028** | **224,595** | **221,401** | **211,132** | **231,135** | **206,320** | **175,473** | **231,488** | **210,787** | **263,077** | **2,661,538** | **76.4%** |
| | 76.4% | 76.4% | 76.4% | 76.4% | 76.4% | 76.4% | 76.4% | 76.4% | 76.4% | 76.4% | 76.4% | 76.4% | 76.4% | |
| Labor Expense | (91,027) | (88,758) | (98,607) | (91,127) | (89,832) | (85,665) | (93,781) | (83,712) | (71,197) | (93,924) | (85,525) | (106,741) | (1,079,894) | -31.0% |
| Operating Expenses: | | | | | | | | | | | | | | |
| Controllable | (38,172) | (37,221) | (41,351) | (38,215) | (37,671) | (35,924) | (39,327) | (35,105) | (29,857) | (39,388) | (35,865) | (44,762) | (452,859) | -13.0% |
| Non-Controllable | (52,914) | (50,719) | (60,250) | (53,012) | (51,758) | (47,725) | (55,580) | (46,836) | (33,724) | (55,718) | (47,590) | (68,122) | (622,947) | -17.9% |
| Base rent, CAM and Taxes | (35,176) | (35,176) | (35,176) | (35,176) | (35,176) | (35,176) | (35,176) | (35,176) | (35,176) | (35,176) | (35,176) | (35,176) | (422,112) | -12.1% |
| Depreciation | (3,200) | (3,200) | (3,200) | (3,200) | (3,200) | (3,200) | (3,200) | (3,200) | (3,200) | (3,200) | (3,200) | (3,200) | (38,400) | -1.1% |
| **Total Operating Expenses** | **(129,463)** | **(126,316)** | **(139,977)** | **(129,603)** | **(127,805)** | **(122,025)** | **(133,283)** | **(119,317)** | **(101,957)** | **(133,482)** | **(121,631)** | **(151,260)** | **(1,536,318)** | **-44.1%** |
| **Operating Income** | **3,857** | **3,682** | **4,445** | **3,865** | **3,765** | **3,442** | **4,071** | **3,290** | **2,320** | **4,082** | **3,431** | **5,076** | **45,326** | **1.3%** |
| *EBITDA ----->* | 7,057 | 6,882 | 7,645 | 7,065 | 6,965 | 6,642 | 7,271 | 6,490 | 5,520 | 7,282 | 6,631 | 8,276 | 83,726 | 2.4% |
| Other Inc./(Exp.): | | | | | | | | | | | | | | |
| Interest income | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0% |
| Interest expense | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0% |
| Total Other Inc./(Exp.) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0% |
| Income before Tax | 3,857 | 3,682 | 4,445 | 3,865 | 3,765 | 3,442 | 4,071 | 3,290 | 2,320 | 4,082 | 3,431 | 5,076 | 45,326 | 1.3% |
| Income Taxes | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0% |
| Net Income or (Loss) | 3,857 | 3,682 | 4,445 | 3,865 | 3,765 | 3,442 | 4,071 | 3,290 | 2,320 | 4,082 | 3,431 | 5,076 | 45,326 | 1.3% |